UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SEAN YOUNG, FOREVER YOUNG BAKERIES LLC; and FOREVER YOUNG PROPERTIES LLC,<br><br>*Plaintiffs*,<br><br>vs.<br><br>TOWN OF CONWAY, NEW HAMPSHIRE<br><br>*Defendant.* | Civil No. 1:23-cv-_____ |

## **COMPLAINT**

Plaintiffs Sean Young and his businesses Forever Young Bakeries LLC, d/b/a "Leavitt's Country Bakery," and Forever Young Properties LLC (collectively, "Plaintiffs") bring this civil rights lawsuit against Defendant Town of Conway, New Hampshire ("the Town").

## **INTRODUCTION**

1.      This lawsuit seeks to vindicate the free speech rights of small business owner Sean Young to display a mural on the front of his local business, Leavitt's Country Bakery ("Leavitt's"). The Town has unconstitutionally targeted the Leavitt's mural for removal not because it poses health and safety risks, but because Leavitt's is a bakery and the painting happens to depict baked goods. Because Town officials perceive the mural's message as commercial, they have classified the mural as a "sign" that violates the Town's sign code and must come down.

2.      The mural is on the front façade of Leavitt's Country Bakery. Local high schoolers designed and painted it in Spring 2022. It shows the sun shining over a New

Hampshire mountain landscape made entirely of baked goods such as donuts and muffins. The mural has added tremendously to the appeal of Leavitt's and generated significant positive interest from the community, including through positive news coverage.

3.      But the Town of Conway has demanded that the painting come down. That's because it says the painting is a sign, not a mural, and that it exceeds the bakery's allowed signage. The Town has threatened imminent enforcement. If Sean does not remove the mural, he risks criminal charges and fines of $275 per day. If he does remove it, the community will lose this delightful display, and the expressive message that Sean and Leavitt's seek to convey through the mural will be extinguished.

4.      The Town's zoning code makes no mention of "murals" but in practice the Town allows them, unregulated. As Conway officials have confirmed, the Town does not consider a painting to be a "sign" if it does not convey what Town officials perceive to be a commercial message. But the Town's perception is that any mural depicting anything related to a business is a "sign." This is governmental discrimination based on the content of the speech and the identify of the speaker. Such content based and speaker based discrimination is presumptively unconstitutional and the Town of Conway cannot justify this discrimination.

5.      The Town's laws, policies, and actions violate Plaintiffs' free speech rights. Town of Conway officials have no right to police art, and Sean should not have to risk criminal charges and fines in order to exercise his freedom of speech. Plaintiffs thus seek a judgment declaring the Town of Conway's sign code unconstitutional, and an injunction prohibiting its enforcement. Only through this Court will the Leavitt's mural be able to stay right where it is, as it is.

## JURISDICTION AND VENUE

6.    Plaintiffs bring this civil rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs seek a declaration that the Town's sign regulations and enforcement against Plaintiffs' mural violate the First Amendment; injunctive relief to protect their mural from forced removal; and nominal damages of $1.00.

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (civil rights jurisdiction).

8.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2). As described below, Plaintiff Forever Young Bakeries LLC, Plaintiff Forever Young Properties LLC, and Defendant reside in this district, and the events giving rise to Plaintiffs' claim occurred in this district.

## THE PARTIES

9.    Plaintiff Sean Young is the sole member of both Forever Young Bakeries LLC and Forever Young Properties LLC.

10.    Plaintiff Forever Young Bakeries LLC is a New Hampshire limited liability company in good standing that does business as "Leavitt's Country Bakery."

11.    Plaintiff Forever Young Properties LLC is a New Hampshire limited liability company in good standing that owns the land upon which Leavitt's Country Bakery operates.

12.    Defendant Town of Conway is a municipal corporation located in Carroll County, New Hampshire.

## STATEMENT OF FACTS

### A.    *Leavitt's gets a mural*

13.    Leavitt's Country Bakery, located at 564 White Mountain Highway, Conway, New Hampshire, 03818, has operated for over 45 years. Local journalists have called Leavitt's "a community gathering spot" and the "unofficial town hall of Conway." See Tom Eastman, *Don't sugarcoat it: Leavitt's Bakery will be missed,* Conway Daily Sun (Jan. 31, 2020), https://www.conwaydailysun.com/news/local/dont-sugarcoat-it-leavitts-bakery-will-be-missed/article_398511f0-4383-11ea-a6f7-f7c6718b9757.html (article published when reporter thought Leavitt's would not continue as a bakery).

14.    Leavitt's is particularly known for its handmade, award-winning donuts. In 2022, Leavitt's won the "Best Doughnuts in New Hampshire" award (as selected by viewers of local broadcaster WMUR).

15.    In 2020, Beth and Ray Leavitt, the founders of Leavitt's, put the business and real property up for sale. The Leavitts wanted the business to continue as a bakery and local gathering spot, as it had been for decades.

16.    But the initial potential buyers wanted to do something else with the business and the property. For instance, one wanted to make it a gas station; another, a parking lot.

17.    Sean Young was a longtime customer who loved Leavitt's, especially its donuts. Though he had no background in baking, he too wanted to see Leavitt's continue as a bakery and gathering spot, so he scraped together his resources and purchased Leavitt's himself. Thanks to Sean, Leavitt's has continued to operate as a bakery.

18.    For years, Leavitt's featured a blank façade above its front door.

19.    After Sean purchased Leavitt's, a friend connected Conway's Kennett High School art teacher to Sean with the idea of a project for Kennett art students: a mural to adorn the Leavitt's façade. Sean loved the idea and heartily gave his consent.

20.    The high school art class designed and painted the mural themselves. The result was an homage to the nearby White Mountains, with a whimsical twist befitting the façade of the beloved local bakery: A painting of sunbeams shining down on a mountain range made of baked goods, such as donuts and muffins. Below is an image of the mural, which is also attached as Exhibit 1.



*The Leavitt's Country Bakery mural, painted by Kennett High School students.*
*Photo credit: The Conway Daily Sun.*

21.    Over the course of approximately six weeks, the students painted the mural onto panels that could be transported from Kennett High School and installed on the Leavitt's façade.

22.    The mural installation occurred on June 12, 2022. There was a formal unveiling attended by the art teacher, the students and their families, other community

members, and local press. The installation was covered positively by the local newspaper, the Conway Daily Sun, and the local radio station, Magic 104.5.

23.     The mural sits above the entrance of the bakery building, which faces north. Due to the angle and positioning of the front of the building, the mural does not squarely face the road and is not easily seen by all passing traffic. Below are Google Street View images of drivers' perspectives as they pass Leavitt's from the north and south, which images are also attached as Exhibit 2.



*Google Street View of Leavitt's Country Bakery (on left), as seen by drivers driving north.*



*Google Street View of Leavitt's Country Bakery (on right), as seen by drivers driving south.*

24.     Locals have told town officials that the mural is "a good thing," and "a positive thing for [the] community," that it "betters [the] town," and that it is "a shining example of teachers, students and community members working in collaboration to bring beauty to the public." *See* Meeting Minutes, Town of Conway Zoning Board of Adjustment ("ZBA") (Aug. 17, 2022) (the "August 2022 ZBA Minutes") at page 3 (attached as Exhibit 3); Meeting Minutes, Town of Conway ZBA (Sept. 21, 2022) (the "September 2022 ZBA Minutes"), at 5 (attached as Exhibit 4).

25.     Leavitt's customers and other community members have told Sean that the mural "livens up this part of town with its bright and beautiful colors," that it "makes them smile each time they see it," that it "brightens their day," that "it's great that the kids did it," and that they are "happy to have the mural in town."

26.     The mural has been such a positive experience for Sean and Leavitt's that Sean wants to do mural projects in the future, either on another part of the Leavitt's building or in the same location as the current mural.

27.     Sean and the art teacher have talked about doing more murals at Leavitt's in the future, such as a yearly art project for Kennett High School art students.

28.     Sean does not know what the subject matter of future murals might be.

29.     The mural has transformed the Leavitt's plain façade into something bright, charming, and attractive. Sean loves it, the students are proud of it, and judging by comments made by scores of locals since its unveiling, the community wants it.

### B.     *Town officials determine the mural is a sign*

30.     Approximately a week after the mural was installed, the Town's Code Enforcement Officer, Jeremy Gibbs, visited the Leavitt's location.

31.     Mr. Gibbs has stated that his visit was not prompted by a complaint about the mural. Rather, he had seen a story in the local news about it. August 2022 ZBA Minutes at page 3.

32.     During the June 21 visit, Mr. Gibbs told Sean that the Leavitt's mural is not a mural but rather a sign.

33.     Mr. Gibbs told Sean that the Leavitt's mural is subject to the size restrictions in the Town's sign code, and as such is too big.

34.     On June 21, 2022, Mr. Gibbs sent Sean a letter. In it, Mr. Gibbs reiterated his determination that the Leavitt's mural is a sign, and under the Town's zoning code the sign is too big and therefore in violation of the code. A true and correct copy of the letter is attached as Exhibit 5.

35.     Sean timely appealed Mr. Gibbs' sign determination to the Conway Zoning Board of Adjustment.

36.      The ZBA has the authority to review and make decisions regarding administrative findings, and to grant variances. Town of Conway Zoning Code ("Zoning Code") § 190-7.

37.     On August 17, 2022, Sean appeared before the ZBA to argue that the Leavitt's mural is not a sign and request that the ZBA reverse Mr. Gibbs' determination.

38.     The reaction from the public to the Town's actions have been decisively in support of the Leavitt's mural. Leavitt's has received over 1,200 comments on its Facebook page (with 99.25% in support of the mural), and 60 comments in the local newspaper, the Conway Daily Sun (95% in support). The story was covered, and continues to be covered, by the Conway Daily Sun and websites outside of the area.

39.    Many people attended the August meeting in passionate support of Leavitt's and the mural, several of whom addressed the ZBA, including parents of the students, the Kennett High School principal, and other members of the Conway community.

40.    The ZBA declined to reverse Mr. Gibbs' determination that the Leavitt's mural is a sign.

41.    Sean subsequently applied to the ZBA for a variance in hopes of keeping the mural.

42.    On September 21, 2022, Sean appeared before the ZBA again to argue in support of the variance.

43.    Like the August hearing, many people attended the meeting in support of the Leavitt's mural and this time even more people stood up to speak their support.

44.    The ZBA denied the variance.

45.    Sean subsequently requested the ZBA grant a rehearing on the variance denial.

46.    At the November 16, 2022 ZBA meeting, with Sean in attendance, the ZBA considered Sean's request and denied it.

47.    On January 5, 2023, Sean received a letter, dated December 23, 2022, from Mr. Gibbs.

48.    In the letter, Mr. Gibbs demanded that Sean "bring the size of [the mural] into compliance" with the sign code (i.e., remove the mural), instructed Sean to apply for a sign permit, and demanded a response within ten days to avoid enforcement proceedings.

49.    A true and correct copy of the letter is attached as Exhibit 6.

50.    This action followed.

**C.    *The Town discriminates through its sign code***

51.    This action against Leavitt's has occurred due to the distinction that Town of Conway officials make between "murals" and "signs"—a distinction that they have enforced for years, and which they make based entirely on the content of the work of art at issue.

52.    The Town of Conway Zoning Code has an incredibly broad definition of "sign":

> *Any device, fixture, placard, structure or attachment thereto that uses color, form, graphic, illumination, symbol, or writing to advertise, announce the purpose of, or identify the purpose of any person or entity, or to communicate information of any kind to the public, whether commercial or noncommercial. Any portion of any awning, either freestanding or attached to a structure, decorated with any sign element, either attached or part thereof, shall be considered a wall sign.*

Zoning Code § 190-31 (definition section).

53.    The sheer breadth of such a definition is incredibly burdensome to speech by Conway citizens. As written, every citizen would be subject to the sign regulations for any physical display of any kind.

54.    But that is not how the Town of Conway enforces its sign code.

55.    Section 190-20(F)(1) is a statement of Town policy and practice toward certain speech.

56.    Section 190-20(F)(1) is titled "Sign content," and provides that the Town "has no intention of restricting individual free speech, but the Town does recognize its right to place reasonable restrictions upon commercial speech."

57.    This policy and practice pervades the Town's actions toward speech in Conway that is conveyed by physical displays.

58.     If Town officials perceive a physical display as conveying a message in any way related to business, they deem the physical display a sign.

59.     But if Town officials perceive a physical display as conveying a message not related to business, they deem it a mural.

60.     If a physical display depicts what is happening inside a building, then Town officials consider the physical display to convey a commercial message and thus they consider the display to be a "sign."

61.     This has been the Town's law, policy and/or practice for many years.

62.     In 2006, the Town enforced its sign code against a local ice cream parlor called "Lickety Splitz." Lickety Splitz had installed ice-cream-cone-shaped trash cans outside of its store. The Town forced Lickety Splitz to remove them, because ZBA members determined that, because Lickety Splitz sold ice cream, and the trash cans were shaped like ice cream cones, the "primary purpose" of the trash cans was to sell ice cream. *See* Meeting Minutes, Town of Conway ZBA ( Aug. 23, 2006), at 3 (attached as Exhibit 7).

63.     In 2009, the Town enforced its sign code against a farm stand's exterior mural of a field being plowed by a draft horse, because the image depicted farming and the farm stand sells product of a farm. (A variance was granted.) *See* Meeting Minutes, Town of Conway ZBA (Aug. 19, 2009), at 1 (attached as Exhibit 8).

64.     As to exterior paintings, it is the Town of Conway's law, policy and/or practice to allow paintings to be displayed without restriction if Town officials consider the paintings to be murals.

65.     This is true even though the Zoning Code does not mention the word "mural."

66.    And Town officials determine what is a "mural" based on the content of the painting.

67.    In the Town of Conway, "signs" get regulated, and "murals" do not.

68.    There are many murals on the walls of businesses in the Town of Conway.

69.    Settler's Green, which is a shopping center located in Conway, is home to many murals. On information and belief, Settler's Green features at least eight paintings on various exterior walls.

70.    Among the Settler's Green murals is one with the message, "Welcome to North Conway," one depicting the story of New Hampshire heritage, and one depicting giant butterfly wings adorned with purses, sunglasses and the like.

71.    Town officials previously stated that the murals at Settler's Green do not meet the Town's definition of a sign. September 2022 ZBA Minutes at 4.

72.    Since 2018, Town officials have not enforced the restrictions in the sign code, including size limitations, against such Settler's Green murals.

73.    The Town made an about-face in December 2022, determining that at least three of the Settler's Green murals—the "Welcome to North Conway," New Hampshire heritage, and butterfly murals—are not murals, but rather signs subject to regulation.

74.    On information and belief, the Town's recent enforcement of its sign code against the Settler's Green murals is due to the controversy over the Leavitt's donut mural.

75.    On information and belief, the Town is enforcing the sign code against certain of the Settler's Green murals based on whether Town officials perceive such murals to be related in any way to Settler's Green's businesses.

76.    Adventure Suites, which is an experiential hotel located in Conway, features exterior artistic displays which are false façades of old-time buildings.

77.     For years, the Town has not enforced the restrictions in the sign code, including the size limitations, against the Adventure Suites artistic façade displays.

78.     In explaining why the Leavitt's mural is being treated differently than displays at Adventure Suites, Town officials have stated that the displays at Adventure Suites do not represent what is inside the building. September 2022 ZBA Minutes at 3.

79.     Town officials have stated that the Leavitt's mural is a sign because it depicts "the business that is within [the Leavitt's] building." August 2022 ZBA Minutes at 2.

80.     Town officials have stated that the "the town's position [that the Leavitt's mural is a sign is based] solely on the graphic of the donuts and the muffins." *Id*.

81.     Town officials have stated that the Leavitt's mural is a sign because it depicts "yummy goodies" that can be found within Leavitt's. September 2022 ZBA Minutes at 3.

82.     Town officials have stated that the Leavitt's mural is a sign because "it is showing what is inside [the Leavitt's] building." *Id*. at 5.

83.     Town officials have stated that if Leavitt's painted over the donuts and muffins and other baked goods with pictures of things not sold inside, the Leavitt's mural would be a mural, not a sign, and would not need a variance in order to stay up. *Id*. at 6.

84.     On information and belief, if the Leavitt's mural depicted the mountains in a realist style rather than as donuts and muffins, Town officials would deem the Leavitt's painting to be a mural and would not enforce the sign code against it.

85.     On information and belief, if the Leavitt's mural depicted the same sunbeams but with blooming flowers rather than baked-goods-mountains, Town officials would deem it a mural and would not enforce the sign code against it (but only if the flowers did not look like baked goods).

86.     The Town's decision to enforce its sign code is based on the content of the message conveyed by the painting and the identify of the speaker rather the possibility that a painting poses a risk to public health or safety.

87.     Approximately 30 feet from the entrance of Leavitt's, accessed from the same parking area, there is a farm stand that faces the road.

88.     Sean has asked ZBA members if the Town would consider the Leavitt's mural to be a sign if its content remained exactly the same, but the mural were displayed on the farm stand rather than on the bakery.

89.     ZBA members told Sean that if the Leavitt's purported sign were displayed on the farm stand rather than the bakery, the Town would consider it to be a mural, not a sign, because the farm stand does not sell baked goods.

90.     The farm stand squarely faces the road, unlike Leavitt's, and therefore the mural should be more noticeable to passersby if it were displayed on the farm stand than if it were displayed on Leavitt's.

91.     Overall, under Town law, policy, and/or practice, the farm stand would be permitted to convey the message of the Leavitt's mural, but Leavitt's would not.

92.     If the Town considers a painting's message to not relate to the business displaying it—i.e., if it considers a painting to be art—then it is Town law, policy, and/or practice to not regulate that painting under the sign code. Instead, the painting is freely allowed.

93.     Therefore, the reason the Town will not allow the Leavitt's mural to stay up is because the Town considers the Leavitt's mural to depict a message related to the bakery, since Leavitt's sells baked goods.

94.     In other words, the Town will enforce the sign code against the Leavitt's mural, thereby forcing its removal, because of Leavitt's Country Bakery's identity and because of the mural's content/subject matter.

### D.     If the mural is a sign, Plaintiffs risk punishment

95.     The Town seeks to enforce Zoning Code § 190-20(F)(3)(a) and (9)—sign size restrictions and sign permitting requirements—against Plaintiffs. See the letters from Mr. Gibbs to Forever Young Properties, attached as Exhibits 5 and 6.

96.     Section 190-20(F) applies to the commercial district in which Leavitt's is located.

97.     Functionally identical regulations apply to "signs" located in other non-residential zoning districts.

98.     Section 190-20(F)(3)(a) of the sign code limits the size of wall signs as follows:

> *Wall sign. For lots without multiple commercial tenants, each lot shall be permitted one wall sign. . . . The height of the message area shall not exceed the greater of 20 feet from the undisturbed ground or a height equal to 75% of the total height of the building, nor shall it exceed the height of the wall to which it is attached. The message area of the wall sign shall be based on the following formulas[.] . . . For floor areas up to and including 50,000 square feet, the maximum message area shall be calculated as follows: 20 + (total square feet floor area X 0.0016).*

99.     In his June 21, 2022 letter, Mr. Gibbs conveyed that the square footage of the bakery is 1,328 square feet, and that, per the formula in § 190-20(F)(3)(a), Leavitt's is allowed a wall sign of only 22.13 square feet.

100.     In his letter, Mr. Gibbs approximated the Leavitt's mural to occupy approximately 78 square feet.

101.     However, the Leavitt's mural in fact occupies approximately 91 square feet.

102.    If the Leavitt's mural is treated as a sign under the Zoning Code, then it is approximately four times bigger than § 190-20(F)(3)(a) allows and therefore violates the Zoning Code.

103.    ZBA members have stated that the Leavitt's mural is four times bigger than what the sign code allows. September 2022 ZBA Minutes at 6.

104.    Generally speaking, signs in the Town of Conway require permits. Zoning Code § 190-20(F)(9). To obtain a permit, a business must complete an application and pay a filing fee of $65.00 per sign. Zoning Code § 190-20(F)(9)(a)[1]-[2]; Town of Conway, Sign Permit Application, available at https://conwaynh.org/wp-content/uploads/2023/01/sign-permit-2023.pdf (last visited January 11, 2023).

105.    If the Leavitt's mural is treated as a sign, Plaintiffs must ultimately either modify the Leavitt's mural and obtain a permit for it, remove the mural entirely, or face punishment including possible criminal charges and fines.

106.    If the Leavitt's mural is a sign and Plaintiffs do not remove it, Plaintiffs could face criminal charges and be subject to penalties of $275 each day that the Leavitt's mural remains up. Zoning Code § 190-6(1)(a)-(b); N.H. Rev. Stat. § 676:17.

107.    Due to his fear of criminal charges and fines, Sean is considering removing or modifying the Leavitt's mural.

108.    Sean does not want to remove the Leavitt's mural or modify it in any way.

109.    If the Leavitt's mural is treated as a mural, then Plaintiffs do not need to obtain a permit or pay permitting fees.

110.    If the Leavitt's mural is treated as a mural, then its current size does not violate the Zoning Code.

111.     If the Leavitt's mural is treated as a mural, then Plaintiffs are not at risk of criminal charges or civil penalties.

112.     If the Leavitt's mural is treated as a mural, then it can stay up as is.

### INJURY TO PLAINTIFFS

113.     The Town's sign code, and the Town's policies and/or practices regarding the enforcement of that sign code, violate Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution.

114.     Plaintiffs want to display the Leavitt's mural exactly where it is, at its current size, with its current content as rendered by the Kennett High School art students.

115.     The Town has told Plaintiffs on multiple occasions that Plaintiffs cannot keep the Leavitt's mural as it is.

116.     Because of the Town's clear and continual threatened enforcement of the sign code against Leavitt's Country Bakery, Plaintiffs fear imminent enforcement proceedings against them.

117.     Because the letter that Sean received from Mr. Gibbs on January 5, 2023, demanded a response from Plaintiffs within ten days to avoid enforcement proceedings, Plaintiffs reasonably and credibly fear imminent proceedings against them.

118.     The Town's imminent enforcement of the sign code against Plaintiffs exposes Plaintiffs to a stark choice: discontinue their protected speech by removing the mural, or expose themselves to risk of criminal charges and steep fines.

119.     Plaintiffs would be able to keep the mural if, in the minds of Town officials, it expressed a different message not relating to Leavitt's Country Bakery.

120.    But for fear of enforcement of the sign code, Plaintiffs would not be considering removing the mural from the Leavitt's Country Bakery façade, even though Plaintiffs want to keep the mural exactly as it is, where it is.

121.    But for the Town's unconstitutional sign code, Plaintiffs would not have to modify their speech or risk facing punishment.

122.    But for the Town's unconstitutional sign code, Plaintiffs would not be in reasonable and credible fear of criminal or civil punishment.

123.    Plaintiffs' speech is being chilled by the Town's imminent enforcement of its sign code against the Leavitt's mural.

## CAUSE OF ACTION

### Count I: Freedom of Speech

124.    Plaintiffs incorporate and re-allege each and every allegation contained in paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.    Count One is brought pursuant to the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

126.    The Free Speech Clause of the First Amendment protects the right of individuals, entrepreneurs, and businesses and to express themselves through physical displays—including through murals with content that bears some relation to their business.

127.    Plaintiffs' mural is speech that is protected by the Free Speech Clause of the First Amendment, as applied to New Hampshire and the Town of Conway via the Fourteenth Amendment.

128.    Plaintiffs want to continue to display their mural exactly as it is without threat of criminal charges or fines hanging over their heads. But Town officials have

clearly and credibly threatened imminent enforcement of the sign code against Plaintiffs, making Plaintiffs fearful of exactly that.

### A.   *The sign code is unconstitutionally content and speaker based*

129.   Paintings and other physical displays of messages are speech protected by the First Amendment.

130.   The Town of Conway deems paintings to be unregulated murals or regulated signs, and therefore treats paintings and their owners differently, based entirely on the subject matter of the paintings and the identify of the painting owners. In other words, the Town discriminates against certain speech based on its content and the person speaking, and enforces the Town sign code based on speech content and the identity of the speaker.

131.   The Town's sign code is an unconstitutional content based and speaker based restriction on speech.

132.    Despite the Town generally regulating all physical displays of speech, including paintings, via its definition of "sign" in § 190-31 of the Zoning Code, the Town's law, policy and/or practice allows some paintings and other physical displays of speech to go unregulated, depending on the content of such paintings or displays and the identity of the persons displaying such paintings or displays.

133.   It is Town law, policy and/or practice to allow paintings and other physical displays that the Town considers noncommercial, or artistic in some noncommercial way.

134.   That is because it is Town law, policy and/or practice not to consider such paintings to be "signs."

135.    The Town demonstrates its antipathy toward content related to a business when it states in the sign code that it has a "right to place reasonable restrictions upon commercial speech." Zoning Code § 190-20(F)(1).

136.    Under the sign code, individuals or businesses can display a painting if the Town perceives the painting's subject matter as meeting Town officials' standards for "noncommercial."

137.    Under the sign code, it is also Town law, policy and/or practice to allow such perceived noncommercial paintings without requiring a permit, fee, or size limitations, and without demanding they be taken down.

138.    Whether    Town    officials    deem    a    painting    commercial    or noncommercial/artistic based on its subject matter or message is a content based restriction on free speech.

139.    Whether    Town    officials    deem    a    painting    commercial    or noncommercial/artistic is also a speaker based restriction on free speech, as it turns on the identity who is displaying that painting.

140.    Imposing different burdens on speech depending on who is speaking and what is being said is content based and speaker based restriction on free speech.

141.    Content based and speaker based restrictions on speech are subject to strict scrutiny. In order to survive this level of scrutiny, the Town must show that its content based and speaker based restriction is narrowly tailored to further a compelling government interest.

142.    The Town cannot meet this burden.

143.    The Town has no evidence that the Town's sign code law, policy and/or practice is narrowly tailored to further a compelling government interest.

144.     The Town also has no evidence that its discrimination against messages that are related to a business is narrowly tailored to further a compelling government interest.

145.     Thus, the different treatment of speech based on speakers and content in § 190-20(F), and like provisions throughout the Zoning Code, is an unconstitutional content based and speaker based restriction on speech under the First Amendment.

**B.      *Even if the sign code is content and speaker neutral, it is still unconstitutional***

146.     Even if the Town's discrimination against messages related to a business were somehow not content based or speaker based, the Town's enforcement of its sign code against Leavitt's still violates the First Amendment.

147.     The Town does not have sufficient justification for either its regulation of Plaintiffs' mural specifically, or its regulation of messages related to business generally.

148.     The Town's regulation of Plaintiffs' mural does not directly advance a substantial, important, or compelling government interest.

149.     The Town's general regulation of messages related to business does not directly advance a substantial, important, or compelling government interest.

150.     The Leavitt's mural does not present a safety hazard. No Town officials, including Mr. Gibbs or ZBA members, have ever stated that the Leavitt's mural presents a safety hazard.

151.     The Town's sign code law, practice and/or policy does not serve the Town's interests of public safety, health, or general welfare.

152.     The Town's sign code law, practice and/or policy, and its enforcement of its sign code against Leavitt's mural, is not narrowly tailored to serve any substantial, important, or compelling government interest.

153.    The Town of Conway's enforcement of its sign code is an unconstitutional restriction of speech under the First Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    An entry of judgment declaring that the Town's discrimination against murals with content related to the business that displays the mural is unconstitutional;

B.    A preliminary injunction prohibiting Defendant from enforcing its Zoning Code § 190-20(F)(1), (3)(a) and (9), and other similar sign regulations in the Zoning Code, against Plaintiffs' mural;

C.    A permanent injunction prohibiting Defendant from taking any enforcement or other action against Plaintiffs for displaying their mural in its current position on the façade of Leavitt's Country Bakery, or anywhere on Leavitt's Country Bakery;

D.    An award of nominal damages in the amount of $1.00 for the violations of Plaintiffs' constitutional rights under the Zoning Code;

E.    An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

F.    All further legal and equitable relief as the Court may deem just and proper.


RESPECTFULLY SUBMITTED this 31st day of January 2023,

/s/ John M. Crabbs, II
John M. Crabbs, II (NH Bar No. 275043)
COOPER CARGILL CHANT, P.A.
2935 White Mountain Highway
North Conway, NH 03860-5210
603-450-5000
jcrabbs@coopercargillchant.com

/s/ Robert Frommer
Robert Frommer (VA Bar No. 70086)*
Elizabeth Sanz (CA Bar No. 340538)*
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, Virginia 22203
(703) 682-9320
rfrommer@ij.org
bsanz@ij.org

*Admission Pro Hac Vice Forthcoming

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SEAN YOUNG; FOREVER YOUNG BAKERIES LLC; and FOREVER YOUNG PROPERTIES LLC, | : |
| | : |
| *Plaintiffs*, | : |
| | : |
| vs. | :    Civil No. 1:23-cv-_____ |
| | : |
| TOWN OF CONWAY, NEW HAMPSHIRE | : |
| | : |
| *Defendant.* | : |

## VERIFICATION OF PLAINTIFF SEAN YOUNG

I, Sean Young, declare as follows:

1. I am a Plaintiff in the above-captioned civil action.

2. I have read the foregoing Complaint and know the contents thereof.

3. The facts contained in this complaint, specifically those set forth in paragraphs 1 through 123, are true and correct to my own knowledge, except matters stated to be alleged on information and belief, which I reasonably believe to be true.

4. All exhibits referenced in and attached to this complaint are true and correct to my own knowledge.

5. If called upon, I would competently testify as to these facts and my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.


/s/ Sean Young

_____
Sean Young


STATE OF NEW HAMPSHIRE
COUNTY OF CARROLL

Signed and sworn before me this 30th day of January 2023 by **Sean Young** in Carroll County, New Hampshire.

Before me,


/s/ Carolyn J. Handverger

_____
Notary Public
My Commission Exp.: Feb 3, 2026