Adopted: October 19, 2022 – As Written

# ZONING BOARD OF ADJUSTMENT

## MINUTES

## SEPTEMBER 21, 2022

A meeting of the Conway Zoning Board of Adjustment was held on Wednesday, September 21, 2022 at the Conway Village Fire Station, 97 Main Street, in Conway, NH, beginning at 7:00 pm. Those present were: Chair, John Colbath; Vice Chair, Andrew Chalmers; Luigi Bartolomeo; Richard Pierce; Planning Director, Jamel Torres; and Planning Assistant, Holly Whitelaw. Alternates Steven Steiner and Jac Cuddy were in attendance.

**PUBLIC HEARINGS**

A public hearing was opened at 7:00 pm to consider a **VARIANCE** requested by **FOREVER YOUNG PROPERTIES, LLC/SEAN YOUNG** [FILE #22-23] in regards to §190-20.F.(3)(a) of the Conway Zoning Ordinance **to allow a 95 square foot wall sign** at 564 White Mountain Highway, Conway (PID 262-62). Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Thursday, August 4, 2022, and Friday, September 9, 2022. This hearing was continued from August 17, 2022.

Mr. Colbath appointed Mr. Steiner as a voting member. Sean Young appeared before the Board. Mr. Colbath read the application and the applicable section of the ordinance. Mr. Young stated this would not be contrary, and he thinks removing the mural would be contrary to public interest; we've had a lot of support from the community. Mr. Young stated we have received over 1,200 comments on Facebook with 99.25% in support, and 60 comments in the newspaper with 95% in support of us. Mr. Young stated the variance is not contrary to public interest.

Mr. Young stated the spirit of the ordinance is observed as it was no one's intention to build or to get a sign; the only reason it is being considered a sign is based on a very vaguely worded, very old ordinance. Mr. Young stated it was brought up by the Board that Randy Cooper had brought up in 2006 that this was unconstitutionally vague. Mr. Young referred to case #06-54, Mount Washington Observatory; and read the minutes of that meeting. Mr. Young stated here we are 16 years later, even though the Zoning Board and the Town Planner acknowledged that it needed to be revisited, and we still have it.

Mr. Young stated the spirit of the ordinance is observed because a sign wasn't being created, and it was never intended to be an advertising sign. Mr. Young stated it can't be seen if you are going north, and it really can't be seen going south; you have to get beyond the campground, beyond the bushes and would really have to be looking for it to see it and not paying attention to driving.

Mr. Young stated substantial justice can only be done if we leave it up; justice is done by giving the opportunity to inspire local youth to be involved in the community and to know that the Town and the Town Board members have their best interest at heart. Mr. Young stated this process from the last meeting to this meeting has helped educate the students the proper way to make positive changes and to stand up for what they believe. Mr. Young stated the actual symbol of justice is a scale; so, taking it down is not balance.

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Mr. Young stated there has been a huge outcry in support, and this Board has a chance to show the youth, the community as a whole and the Town that you will do justice and listen to what they want.  Mr. Young asked if it is justice that this unconstitutionally vague ordinance that was written a long time ago, that the Board agreed should be upgraded, hasn't been updated in 16 years.

Mr. Young stated the value of surrounding properties will not be diminished; he has spoken to almost everyone surrounding and one of the neighbors helped cut the wood and make the signs for the students.  Mr. Young stated they get visits from the campground almost daily and from Lamplighters Park, and they both support this project.

Mr. Young stated in regard to hardship, the public purpose of the ordinance is to promote compliance.  Mr. Young stated it is not what is in the best interest of the public now, it is not in the spirit of the ordinance, and it is definitely not doing justice for the vast majority of the Town now; if anything, it is raising the property value.

Mr. Young stated in this case allowing the sign to remain would benefit the general public because the sign is a work of art made by the public for public enjoyment and it is supported by the public.  Mr. Young stated the proposed use is reasonable as it blends in with the building, and it is the perfect spot for it.  Mr. Young stated it faces the side parking lot, not the road; it is a perfect place to display artwork.  Mr. Young stated it is not just a sign; it shows the talent of local children, it draws pleasant attention to our unique property and our business that can only be enjoyed while in our parking lot.

Mr. Bartolomeo asked Mr. Young to speak to owing to special conditions of the property.  Mr. Young stated the special conditions that distinguish it from other properties is it is a small square one-acre lot with two buildings.  Mr. Young stated our building is not facing the road, the mural or the sign is not facing the road, it is surrounded on all sides by other business, you cannot even see us if you are coming north, coming south the campground sign blocks our building, and until right on our parking lot you cannot see it.  Mr. Young stated unless you are trying to look for it you won't even notice it.

Mr. Bartolomeo stated this part of the ordinance is generally interpreted to mean special conditions of the property, meaning of the land, not the structures on it.  Mr. Young stated there is also a right-of-way connected on it and a big telephone pole blocking our main sign; there is no other property that not only has a right-of-way going through it, but it is surrounded by other properties with signs, trees and bushes blocking view of everything.  Mr. Young stated it is the perfect spot to display local artwork that can barely be seen from the road.

Mr. Young stated with these special conditions and the outdated ordinance, which the Zoning Board agreed needed to be changed and couldn't since April 2006, it would create a hardship if it requires Leavitt's to remove the sign, it would interfere with our reasonable use of the property, allowing the sign to remain is in the public's interest, it is doing substantial justice, it does not negatively affect property value, and it would in fact benefit the Town and the neighborhood with that reasonable use.

Adopted:  October 19, 2022 – As Written
CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022

Mr. Young stated due to the degree of the time and effort it took for the students to paint the mural, the response from the public, the future projects that can be done with the Kennett Art Department on that very same spot greatly outweighs any public negativity that could be caused.  Mr. Young stated there is no reason why they shouldn't be granted the variance; it does nothing negative, it is only positive.

Mr. Young asked where does the hardship lie if it stays up; where is the hardship to the Town, where is the hardship to the community.  Mr. Colbath asked what is the business located on this piece of property.  Mr. Young answered a bakery.  Mr. Colbath asked if the mural goes away will the business go away. Mr. Young answered in the negative. Mr. Colbath stated there is a continued use of that property.  Mr. Young answered in the affirmative.  Mr. Colbath stated so that means there is no hardship by state statute.  Mr. Young stated that doesn't seem to be the spirit of the ordinance if the other four things are all completely in favor, but this one last thing that should have been updated 16 years ago.

Mr. Bartolomeo stated the hardship criteria is always a tough one and it has to be inherited in the land.  Mr. Young stated so we are not interested in what is best for the community, but compliance with an old ordinance that should have been updated 16 years ago.  Mr. Bartolomeo stated he has spouted off regarding the inadequacies of our sign definition, but nonetheless, it is the one we're stuck with.

Mr. Bartolomeo stated one comment in the tele-talk by Shawn from Madison stated, and he's paraphrasing, that we live in a society that's held together by its laws, and the better part of these students' education would have been to give them a civics lesson, and find out if they can do this and that would have been a great lesson.  Mr. Young stated it would have been if they were having them create a sign for them.

Mr. Chalmers stated he does not doubt for a moment that the kids put in a lot of time and heart in producing this, and as a business owner you know about sign regulations presumably, but at some point, one of the adults should have stepped up and assisted the kids with the process.  Mr. Chalmers stated the failure here is on the adults that should have been helping guide this process, and certainly someone should have had a discussion with the Town prior to doing that.  Mr. Chalmers stated an article that mentioned the artwork stated it depicts the yummy goodies that can be found within, and is, by definition, a sign.

Mr. Chalmers stated the unconstitutional discussion with Randy Cooper was with Adventure Suites, not the Mount Washington Observatory, so the case cited is not the right case.  Mr. Chalmers stated in the case of Adventure Suites those signs on the building does not represent what is inside that building, and it was approved by the Planning Board.  Mr. Chalmers stated the Town is upholding the ordinance that all of the voters has said this is what we want; the majority of the voters in Town has said this is what we want.  Mr. Bartolomeo stated we took an oath to uphold the zoning ordinance.

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Mr. Colbath asked for public comment;  Wyatt Coughlin stated if it were to be taken down, would Settlers Green be affected if they had to take down their murals.  Mr. Gibbs stated the murals at Settlers Green don't meet the Town's definition of signage.  Mr. Colbath stated most of them are on internal walls; not on the front of a building or on a roadway.

Jac Cuddy stated there was a big push by the Town for snowmen; we had snowmen in front of all these buildings that were artistically designed and the artist designed it to emphasize the business that was going inside.  Mr. Cuddy stated he does not believe they were considered signs at the time because they were artistic murals on snowmen.

Skye Raino stated art was her favorite and the biggest core memory that she has, and when did a mural she would have loved it to be on a building.  Ms. Raino stated she cannot understand why this is a problem when there are other things to be focusing on.

Catherine McDonald, a parent of one of the students that did the mural, stated her main issue is that the onus for changing this is falling on Leavitt's which is really not fair.  Ms. McDonald stated they have been trying to do something that brings out the best in the community, help the students and try to make the community a beautiful place.  Ms. McDonald stated she doesn't think it is right to put that on them, that is a lot of legal fees, a lot of work and a lot of time and effort, and its not right.

Mark Hounsell stated he is here as a citizen interested in what is going on, but also here as a member of a Planning Board, he is not speaking in a Planning Board position, he is speaking his position.  Mr. Hounsell stated this has brought to light a problem that has been here some time and that is the sign ordinance; he's been in Town long enough to know that no one is really satisfied with the sign ordinance, and the Planning Board needs to address this as there is certainly some flaws.  Mr. Hounsell stated Inspector Gibbs did everything correct; he did his job, and this Board's job is a tough one as you have to enforce an ordinance that is insufficient.

Mr. Hounsell stated there needs to be good reason to grant a variance, and he is here to suggest possibly a good reason; and that is to revisit your decision that this is a sign.  Mr. Hounsell stated if it is a sign, it is a very poor one; it is not going to inspire anyone to stop and buy a donut.  Mr. Hounsell stated it is a mural.  Mr. Hounsell stated Mr. Cuddy points to a very important precedent, the snowmen.  Mr. Hounsell stated when we look at law, we should understand that it is to guide us not control us.

Mr. Hounsell stated for the children to feel the pain of doing something good, that indeed is a lesson, but the bigger responsibility is on the adults and they should have done better; and they should have done what they could to be in compliance if this was to be a sign.  Mr. Hounsell stated he doesn't think they meant it as a sign, and he hopes this Board would be able to find a way of understanding that this mural was a poor sign and grant the variance that is being requested.  Mr. Hounsell stated we have a flaw, the flaw is the sign ordinance, not the enforcement, and he doesn't think the applicant should have to bear the brunt of the flaw.

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Ed Garrison stated the reason we didn't teach a better lesson was because there was never an intent to make a sign; that is why we didn't have a civics lesson, we felt we were leading by giving the kids a place for their artwork.  Mr. Garrison stated we thought we were just doing art.  Mr. Garrison stated he hopes there is a way for the variance to be granted; we are asking for your graciousness.

Olivia Benish, Art Teacher at Kennett High School, stated she would like to apologize to the Board and to her students that she did not do the due diligence to make sure this mural would not be inappropriate and a fitting piece of artwork that she thought it would be for the Town.  Ms. Benish stated the intent was to create a public work of art that connected our community and our businesses, and give our kids an opportunity.

Ms. Benish stated there are conversations being had with the AP Civics teacher, and we are planning on pursuing creating a warrant article so that we can continue to create public artwork.  Ms. Benish stated there has to be a way that we can all agree that this is positive and we can do this without upsetting the law and the powers that be.  Sid Jones stated it is not a mural or a sign it is a gift; and it should be able to be left as a gift, as a mural, as a piece of art.  Mr. Jones stated Leavitt's name is not on it, it is just a piece of art work.

Josh McAllister stated he would like to open the conversation on what the opportunities are for this mural moving forward; the variance as presented and the law as it is written he doesn't see how the Board can vote for the variance.  Mr. McAllister asked if there is a mechanism to allow time, does the Board have to make a decision here.  Mr. McAllister asked if there is time to begin to draft revised ordinances.

Mr. McAllister stated this is a positive thing for our community, and think a lot of us would like to see more things like this.  Mr. McAllister asked what are the options available to anyone who is interested in adjusting the way our signage ordinances are written while not requiring the mural and/or sign to be removed.  Mr. McAllister asked what legal remedies are there for staying this decision to allow them to pursue an ordinance change.  Mr. Colbath stated he does not know the answer to that question; the Board is hearing a variance which is very criteria based, you either meet the criteria or you don't.  Mr. Hounsell asked do you have within parliamentary rules the opportunity to take this under advisement.  Mr. Colbath answered in the negative.

Kristin Groves stated she feels the Board members were appointed by the folks who felt confident in your ability to uphold the zoning ordinance, but also to interpret zoning ordinances for the betterment of the Town.  Ms. Groves stated a case has been exceptionally strongly made that keeping this mural up in its current location betters this town.  Ms. Groves stated if it is taken down, how does it better the Town.  Ms. Groves stated taking it down may uphold the ordinance, but it does not better the Town.

Mr. Steiner stated he does not think it is a sign, and he believes their constitutional rights are being violated by not letting them have the sign.  Mr. Chalmers stated the Supreme Court has ruled on this several times; our ordinance is not all that vague.  Mr. Chalmers stated it is a sign in that it meets our definition of a sign, it is showing what is inside that building.  Mr. Chalmers stated the Supreme Court has defined signs almost the same way our ordinance is written; and they have ruled in favor of the regulation.

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Tom Eastman of the Conway Daily Sun asked if the way out of this is by painting over the muffin mountains that they are supposed to symbolize, but if they were painted over the things that are sold inside and make it a landscape, therefore, it is a mural and not a sign and wouldn't need a variance.  Mr. Bartolomeo and Mr. Chalmers answered in the affirmative.

Margaret Rieser, lives in Tamworth and her son was one of the artists, stated the word variance and exception gives within the law some chance of interpretation, some wiggle room or there would be no variances and exceptions.  Ms. Rieser stated she understands the need to draw the line somewhere, but this is a lousy case to set the divide on.  Mr. Hounsell stated he would offer that the Board rescind their previous action determining that this is a sign, and declare it to be a mural and move on from there.  Mr. Colbath closed public comment at 8:08 pm.

Mr. Pierce stated his daughter is a muralist so he fully supports what they do, and there is also the law.  Mr. Pierce stated he doesn't believe the intent was to create a sign, but it does meet the definition of a sign.  Mr. Pierce asked why can't we compromise; alter the mural so it doesn't meet the definition of a sign.  Mr. Chalmers stated we are dealing with a sign that is four times what is allowed, none of that has been addressed by any of the testimony.

Mr. Colbath read item 1.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the variance will not be contrary to the public interest.**  Mr. Colbath asked for Board comment; Mr. Chalmers stated the public is all of the voting public, and though it is awesome that all these people showed up it is not a majority of the town.  Mr. Colbath stated the public interest here is the public has given us a sign ordinance that we have to deal with, and the public interest is to uphold the sign ordinance.  **Motion defeated unanimously.**

Mr. Colbath read item 2.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the spirit of the ordinance is observed.**  Mr. Colbath asked for Board comment; Mr. Chalmers stated as hard as this is, the spirit is the ordinance is what the Town has given us to deal with.  **Motion defeated unanimously.**

Mr. Colbath read item 3.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that substantial justice is done.**  Mr. Colbath asked for Board comment; Mr. Chalmers asked if it is justice to the applicant or justice to the public.  Mr. Colbath answered to the public.  **Motion defeated unanimously.**

Mr. Colbath read item 4.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the values of surrounding properties are not diminished.**  Mr. Colbath asked for Board comment; Mr. Chalmers stated testimony was given that the owner of the property has spoken with all of the abutters and it would not diminish the value of their properties.  **Motion carried unanimously.**

Mr. Colbath read item 5.a.i.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that no fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property.**  Mr. Colbath asked for Board comment; there was none.  **Motion defeated unanimously.**

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Mr. Colbath read item 5.a.ii.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the proposed use is a reasonable use.**  Mr. Colbath asked for Board comment; there was none.  **Motion defeated with Mr. Steiner, Mr. Chalmers, Mr. Pierce and Mr. Colbath voting in the negative and Mr. Bartolomeo voting in the affirmative.**

**Mr. Chalmers made a motion, seconded by Mr. Steiner, that based on i and ii above literal enforcement of the provisions of the ordinance would result in an unnecessary hardship.**  Mr. Colbath asked for Board comment; there was none.  **Motion defeated unanimously.**

Mr. Colbath read item 5.b.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that if the criteria is subparagraph a are not established, an unnecessary hardship will be deemed to exist, if, and only if, owing to special conditions of the property that distinguish it from other properties in the area, the property cannot be reasonably used in strict conformance with the ordinance, and a variance is therefore necessary to enable a reasonable use of it.**  Mr. Colbath asked for Board comment; Mr. Chalmers stated this would not negatively impact his business by not having the sign.  **Motion defeated unanimously.**

**Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, that, based on the forgoing findings of fact, the variance from §190-20.F.(3)(a) of the Town of Conway Zoning Ordinance to allow a 95 square foot wall sign be granted.  Motion defeated unanimously.**

Mr. Colbath explained the rehearing process.

*****************************************************************************

A public hearing was opened at 8:22 pm to consider a **SPECIAL EXCEPTION** requested by **WILLIAM AND LISA BELEN** [FILE #22-25] in regards to §190-13.K.(4) of the Conway Zoning Ordinance **to allow a home-based daycare center serving seven to fifteen people** at 152 Stark Road, Center Conway (PID 266-107).  Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, September 9, 2022.

Mr. Steiner stepped down at this time.  Mr. Colbath appointed Mr. Cuddy as a voting member.  Lisa Belen appeared before the Board.  Mr. Colbath read the application and the applicable section of the ordinance.

Ms. Belen stated the Fire Chief is only allowing a maximum of 12 children without a sprinkler system.  Ms. Belen stated this is a single-family home where the basement has been renovated for a dedicated space for the children; it has its own egress.  Ms. Belen stated they expanded the length of the driveway for multiple cars during drop off and pickup, but drop-off and pick-up times are staggered.  Ms. Belen stated they have not changed anything on the outside other than adding a fenced in area.  Ms. Belen stated this is an educational program for children.

Mr. Colbath asked for Board comment; Mr. Cuddy asked if the driveway is large enough to handle several cars at the same time.  Ms. Belen answered in the affirmative and stated it can hold up to 6 cars.  Ms. Belen stated there are two fenced in areas; one is 600 square feet and the other is 800 square feet.

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Mr. Colbath asked for public comment; Sarah Montgomery-Kennett stated she lives on Stark Road and she has been approached by several neighbors and the concern is speed in this area.  Ms. Montgomery-Kennett stated in the past five years there have been five major accidents on that corner.  Ms. Montgomery-Kennett stated she is concerned with the traffic and where all these cars will go, as there is no siding on the road there, it is just a drop off to dirt.

Bruce Hamson asked the number of children.  Mr. Colbath answered 12.  Ms. Montgomery-Kennett asked what will the Town do to make that section of roadway safe with the increased traffic.  Mr. Bartolomeo stated that is a really good question and asked if the Town could post a slower speed limit in that area.  Mr. Torres stated that would be discussed at Planning Board; not sure speed limit signs will make a difference; it is usually the road design that determine how people travel.

Mr. Colbath closed public comment at 8:34 pm.  Mr. Pierce asked traffic safety vs. traffic access; is there a distinction there.  Mr. Colbath stated he thinks traffic safety becomes a Planning Board issue.  Mr. Torres stated it states traffic access to and from the development, he believes that would be vehicles coming in and out of the property.  Mr. Pierce stated Ms. Montgomery-Kennett's concern is for the Planning Board to address.  Mr. Colbath agreed.

Mr. Cuddy stated it would appear that the issue would be people parking on the side on the street.  William Belen stated there will be no one parking on the side of the street.

Mr. Colbath read item 1.  **Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, that traffic access to and from the development does not alter the character of the abutting residential neighborhood.**  Mr. Colbath asked for Board comment; there was none.  **Motion carried unanimously.**

Mr. Colbath read item 2.  **Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, that the development is architecturally compatible with the height, scale, color and detail of the surrounding residential neighborhood.**  Mr. Colbath asked for Board comment; Mr. Chalmers stated all of the work was internally.  **Motion carried unanimously.**

Mr. Colbath read item 3.  **Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, that a site plan approval or site plan exemption is granted by the Planning Board.**  Mr. Colbath asked for Board comment; Mr. Bartolomeo asked if the special exception needs to be granted to be able to go to the Planning Board.  Mr. Colbath answered in the affirmative.  **Motion carried unanimously.**

Mr. Colbath read item 4.  **Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, that the size of the lot is appropriate to provide greenspace and play areas.**  Mr. Colbath asked for Board comment; there was none.  **Motion carried unanimously.**

**Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, that, based on the foregoing findings of fact, the Special Exception pursuant to §190-13.K.(4) of the Town of Conway Zoning Ordinance to allow a home-based daycare center serving seven to fifteen people be granted.  Motion carried unanimously.**

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A public hearing was opened at 8:27 pm to consider a **VARIANCE** requested by **PERLEY AND LOUISE HEAD** [FILE #22-26] in regards to §190-25 of the Conway Zoning Ordinance **to allow the construction of a single-family home within the Mountain Conservation Overlay District** on Hurricane Mountain Road, North Conway (PID 206-1).  Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, September 9, 2022.  This application was withdrawn by the applicant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Notice is hereby given that a public hearing will be opened at 8:28 pm on Wednesday, September 21, 2022 at the Conway Village Fire Station in Conway, NH to consider a **REQUEST FOR 2-YEAR EXTENSION PURSUANT TO NH RSA 674:33 IV.(b)** requested by the **ADVENTURE & ENTERTAINMENT PROPERTIES, LLC** for **SPECIAL EXCEPTIONS** granted September 16, 2020 under Case No. 20-26 in regard to §190-26.B.(1)(f), Case No. 20-27 in regard to §190-26.B.(1)(d), Case No. 20-28 in regard to §190-26.B.(1)(l), Case No. 20-30 in regard to §190-26.B.(1)(a), and Case No. 20-38 in regard §190-26.B.(1)(m), and for **VARIANCES** granted September 16, 2020 under Case No. 20-29 in regard to §190, Use Table, Case No. 20-31 in regard to §190, Use Table and Case No. 20-32 in regard to §190, Use Table of the Conway Zoning Ordinance at 1550 White Mountain Highway, North Conway (PID 246-22).

Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, September 9, 2022.  Mr. Cuddy stepped down.  Mr. Colbath appointed Mr. Steiner as a voting member.  Josh McAllister of HEB Engineers appeared before the Board.  Mr. McAllister reviewed the project.  Mr. McAllister stated coming out of the pandemic the campground spent their time trying to figure out post pandemic operations, and did not move forward with the projects.  Mr. McAllister stated they would like to request a two-year extension on the approvals granted in 2020.

Mr. Colbath asked for Board comment; Mr. Bartolomeo asked if there are any changes.  Mr. McAllister stated they are not changing anything.  Mr. Colbath asked for public comment; there was none.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, to grant a two-year extension for Case No. 20-26, Case No. 20-27, Case No. 20-28, Case No. 29, Case No. 20-30, Case No. 20-31, Case No. 20-32, and Case No. 20-38 until September 18, 2024.  Motion carried unanimously.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A public hearing was opened at 8:49 pm to consider a **VARIANCE** requested by **THE RESIDENCES AT SACO RIVER, LLC** [FILE #22-27] in regards to §190-20.B.(1) of the Conway Zoning Ordinance **to allow the construction of 243 residential dwelling units** at 1552 White Mountain Highway, North Conway (PID 246-23).  Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, September 9, 2022.

Adopted:  October 19, 2022 – As Written
CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022

Mr. Colbath appointed Mr. Steiner as a voting member.  Mark Lucy of Horizons Engineering, White Mountain Survey Engineering Division, Rob Barsamian, owner of The Residences at Saco River, LLC and one of the partners of OVP Management, Inc., and Derek Lick, Attorney with Sulloway and Hollis, appeared before the Board.  Mr. Colbath read the application and the applicable section of the ordinance.

Mr. Lucy stated they are looking for a variance to allow 243 residential units on 15.6 acres.  Mr. Lucy stated the parcel contains 16.4 acres landward of the Saco River with the area outside of the floodplain is 15.6 acres.  Mr. Lucy stated the property benefits from an easement across the property to the north to Sawmill Lane.  Mr. Lucy stated we are using the special exception criteria from §190-20.B.5.(c) by way of example on how we are following §190-20B.5.(c), but we are actually seeking a variance, not a special exception.

Mr. Colbath asked for Board comment; Mr. Bartolomeo asked if going with strict conformance with the special exception how many units would be allowed.  Mr. Lucy answered 187 residential units would be allowed by special exception.  Mr. Bartolomeo stated that is a significant increase.  Mr. Lucy stated they are looking for 243, which is just under 16 units per acre.  Mr. Lucy reviewed the architectural renderings with the Board.

Mr. Bartolomeo asked what are you doing for workforce housing.  Mr. Lucy stated they are defined as deed-restricted.  Mr. Bartolomeo asked how many of those are proposed.   Mr. Lucy answered 30%, or 72 one-bedroom units between 750 and 966 square feet.  Mr. Bartolomeo stated the request is 56 units above what is allowed; is that number needed to make this financially viable.  Mr. Barsamian stated we wouldn't be here if it wasn't; the only way to make it work is with what is being presented to the Board today.

Mr. Barsamian stated the reason we looked at the special exception criteria, but asking for a variance it lets us give something back.  Mr. Barsamian stated this is going to be a residential community; we are not showing the clubhouse and all the amenities because we are not there yet, but we wanted to develop a community and the only way to underwrite this is to get the density up.  Mr. Barsamian stated the only way it makes sense to us is with these numbers.

Mr. Bartolomeo stated he thinks the concessions of the ordinance are more than generous; he is very scared for the Town every time we go over this number.  Mr. Barsamian stated he doesn't know where the 12 units per acre came from, but it is a number out of a hat.  Mr. Barsamian stated we are doing 100 units an acre in urban settings.  Mr. Barsamian stated we are not asking for any other relief on this site, we have 16 acres; this project fits on the land that we have.  Mr. Barsamian stated we need a variance to make it work; we cannot underwrite this project in this market at these rental rates unless we get the density.

Mr. Barsamian stated no one has done a residential development, why, because the 12-units per acre for residential apartments does not work.  Mr. Barsamian stated in this situation on this unique site based on how much land we have based on where it is, based on the need of the community, and based on us needing rental apartments, not short-term rental apartments, the whole development is long-term rental apartments.

Adopted:  October 19, 2022 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022**

Mr. Bartolomeo stated they are only deed-restricted for 20-years, it is not creating permanent work-force housing.  Mr. Bartolomeo stated it has a 20-year life span on it and then it can become a condominium.  Mr. Barsamian stated they are developing this as a residential apartment community, not a condominium community; we are partnering up with a group that that is all they do.

Mr. Lick stated this lot is difficult; one thing that makes this unique is this lot is a back lot and it has an extensive dog leg, which is the only way to get to a currently existing roadway.  Mr. Lick stated in order to get the second access we have to go over another easement and build a roadway on the back side of the parcel in order to gain access.  Mr. Lick stated those are extensive and lengthy roadways which also requires water and sewer connections.  Mr. Lick stated if you compare this lot to all the other lots in the district, it is unique with the exception of one or two others.

Mr. Lick stated the rest of them all have significant road frontage, they are not set back almost 580-feet to get to the developable area, and it is the unique nature of that lot that warrants, at least in this case, to move beyond what is required in the special exception.  Mr. Lick stated this lot is unique and because this lot is unique a variance should be granted. Mr. Lick stated we are not saying that all lots should be this dense, we are not saying all are entitled to it, but in this unique lot in this particular instance it makes sense.  Mr. Lick stated unless you reach this density, this lot cannot be built for residential use; it just doesn't work.

Mr. Bartolomeo asked financially because of the extensive sewer and water infrastructure and roadways.  Mr. Lick stated to be built for residential use, which requires the roadways and connection to water and sewer, the only way it is feasible, the only way it can be done, is with this density.  Mr. Lick stated if this lot were a front lot and directly on White Mountain Highway, or directly on another public road, we would not have that significant expense to get back to the development, but we don't have that.  Mr. Lick stated somehow it has to be recovered, or it is just not doable.

Mr. Colbath stated not being a developer, he thinks we could compromise for the use of this piece of property; and we know we need affordable housing units.  There was discussion regarding cost of the units, and the difference between affordable and workforce units.  Mr. Barsamian stated he is willing to deed restrict 40% of the units.

Mr. Colbath asked for public comment; Mark Hounsell stated he thinks this is an important variance to grant.  Mr. Hounsell stated what we have here is an opportunity not for affordable housing not for workforce housing, but for available housing.  Mr. Hounsell stated when the inventory is increased it frees up other properties that may serve the need for people to be able to find affordable housing.  Mr. Hounsell stated this is a unique piece of property; this is an improvement and will increase the availability of units. Mr. Hounsell stated this is not short-term rentals, and if he thought for a moment it was going to be for short-term rentals, he would be hard against it.

Mr. Lick referred to and read *Application for Variances* [in file] date stamped 08/31/22.

Adopted:  October 19, 2022 – As Written
CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022

Mr. Pierce stated he doesn't think hardship has been shown.  Mr. Bartolomeo stated they demonstrated the hardship in the accessibility.  Mr. Colbath stated where Mr. Pierce is coming from is hardship inherit in the lane.  Mr. Lick stated if this were on Route 16, we would not be here asking for a variance.

Mr. Bartolomeo stated if this were on a flat site with frontage on Route 16 where there is water and sewer available it would be a whole different story.  Mr. Barsamian stated it is not just one thing, it's not just density; we need the density because of these things and how unique this site is.

Mr. Colbath read item 1.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the variance will not be contrary to the public interest.**  Mr. Colbath asked for Board comment; Mr. Pierce stated he doesn't think it has been shown.  **Motion carried with Mr. Pierce voting in the negative.**

Mr. Colbath read item 2.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the spirit of the ordinance is observed.**  Mr. Colbath asked for Board comment; Mr. Pierce stated the intent of the ordinance was 12-units per acre.  **Motion carried with Mr. Pierce voting in the negative.**

Mr. Colbath read item 3.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that substantial justice is done.**  Mr. Colbath asked for Board comment; there was none.  **Motion carried with Mr. Steiner voting in the negative.**

Mr. Colbath read item 4.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the values of surrounding properties are not diminished.**  Mr. Colbath asked for Board comment; Mr. Pierce stated there will be a lot of traffic.  **Motion carried with Mr. Pierce voting in the negative.**

Mr. Colbath read item 5.a.i.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that no fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property.**  Mr. Colbath asked for Board comment; there was none.  **Motion carried unanimously.**

Mr. Colbath read item 5.a.ii.  **Mr. Chalmers made a motion, seconded by Mr. Steiner, that the proposed use is a reasonable use.**  Mr. Colbath asked for Board comment; there was none.  **Motion carried unanimously.**

**Mr. Chalmers made a motion, seconded by Mr. Steiner, that based on i and ii above literal enforcement of the provisions of the ordinance would result in an unnecessary hardship. Motion carried with Mr. Pierce voting in the negative.**

**Mr. Chalmers made a motion, seconded by Mr. Steiner, that item 5.b. is not applicable. Motion carried unanimously.**

Adopted:  October 19, 2022 – As Written
CONWAY ZONING BOARD OF ADJUSTMENT – SEPTEMBER 21, 2022

**Mr. Chalmers made a motion, seconded by Mr. Steiner, that, based on the forgoing findings of fact, the variance from §190-20.B.(1) of the Town of Conway Zoning Ordinance to allow the construction of 243 residential dwelling units be granted with the condition that 40% of the units are deed restricted as full time rental units.  Motion carried with Mr. Pierce voting in the negative.**

### REVIEW AND ACCEPTANCE OF MINUTES

**Mr. Chalmers made a motion, seconded by Mr. Bartolomeo, to approve the Minutes of August 17, 2022 as written.  Motion carried with Mr. Steiner abstaining from voting.**

Meeting adjourned at 9:58 p.m.

Respectfully Submitted,



Holly L. Whitelaw
Planning Assistant