Adopted:  September 16, 2009 – As Written

# ZONING BOARD OF ADJUSTMENT

# MINUTES

# AUGUST 19, 2009

A meeting of the Conway Zoning Board of Adjustment was held on Wednesday, August 19, 2009 at the Conway Town Office in Center Conway, NH, beginning at 7:30 pm.  Those present were: Chair, Phyllis Sherman; Vice Chair, John Colbath; Andrew Chalmers; Alternate, Cynthia Briggs; Alternate, Martha Tobin; Alternate, Dana Hylen; Planning Director, Thomas Irving; and Planning Assistant, Holly Meserve.

## APPOINTMENT OF ALTERNATE MEMBERS

Ms. Sherman appointed Ms. Briggs and Ms. Tobin as voting members.

## PUBLIC HEARINGS

A public hearing was opened at 7:30 pm to consider a **VARIANCE** requested by **THE ESTATE OF CLIFFORD JACKSON/ WESTON'S FARM, LLC** in regard to §147.13.1.8.3 of the Conway Zoning Ordinance to permit the proposed mural at 635 West Side Road, Conway (PID 262-31). Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, August 7, 2009.

John Weston of Weston's Farm Stand appeared before the Board.  Ms. Sherman read the application and the applicable section of the ordinance.  Mr. Weston stated that he views the mural as artwork, but the Town sees it as a sign.  Mr. Weston stated that the West Side Road is a scenic road and farmland and this mural would compliment that.  Mr. Weston stated that you cannot get to the farm stand without passing a working farm on either end.

Mr. Weston stated that he has had a lot of feedback that it is an attractive mural and would compliment the area.  Mr. Weston stated original plan was to remove it at the end of the season so the winter elements would not ruin the artwork.  Mr. Weston stated that the mural compliments the West Side Road and a lot of people agree and share support.

Ms. Sherman asked for Board comment; Mr. Chalmers asked if everyone has read the definition of a sign.  Mr. Colbath stated many times.  Mr. Weston stated depending how strictly you enforce the definition; we are not plowing fields with draft horses at this location.  Mr. Chalmers asked if the lettering would remain on the sign.  Mr. Weston stated when he asked at the appeal hearing if the lettering was removed would it be considered a sign, it was agreed that it would be.  Mr. Colbath asked if the Weston Farm part is removable.  Mr. Weston answered in the affirmative.

Ms. Sherman asked for public comment; David Menella submitted a copy of the cover page of the April 8, 1997 Zoning Ordinance, page 1 of that Zoning Ordinance and a list of questions to the Board and referred to it as the original zoning ordinance.  Mr. Menella referred to and read §147-2 and his list of questions.  Ms. Sherman stated that the original ordinance was passed in 1980 and not in 1997. Mr. Menella asked if the purpose of the ordinance was changed.  Mr. Chalmers stated that the Towns people voted to adopt the change, not this Board.  Ms. Sherman answered in the affirmative that the ordinance has changed and stated §147-2 in 1997 is now §147-3 in the new ordinance.

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

Mr. Menella stated so our Zoning ordinance has changed drastically.  Ms. Sherman answered in the affirmative.  Mr. Menella stated the reason he is here is he travels that road as much as he can as it is the most beautiful road to get from Conway to North Conway.  Mr. Menella stated that he travels that road as much as he can and that sign to him is an addition to that travel not a detriment.

Margie stated she is in favor of the sign and she happened to be here when Lickity Splitz was here for their ice cream cone trash cans.  Margie stated if this is signage it sure is beautiful and it is helping our community.  Virginia Moore stated she is in favor as an artist and with or without the lettering it is artwork, it is a reflection of the Mount Washington Valley.

Deb Chalmers stated that it is a beautiful sign, but it is a sign and the Town has voted.  Ms. Chalmers stated if this sign goes through then what other signs would be allowed, it is the Board's job to uphold the ordinance.  Bob Tafuto stated that the whole purpose of the ZBA is to take examples and look at them on their own merits.  Mr. Tafuto stated that the ZBA has a responsibility to take those items that border on the rules and make exceptions.

Mr. Chalmers asked if this sign were to be allowed how many signs would be on site.  Mr. Weston stated there is a roof sign and there is an A-frame sign.  Mr. Weston stated if it would help in regard to amount we could remove the roof sign.  Mr. Colbath stated either Weston Farm on the mural should be removed or the one on the roof should be removed.  Mr. Colbath stated that he agrees with the ordinance, this is a variance and this Board does not set a precedent.

Ms. Sherman read item 1.a.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that an area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property.**  Ms. Sherman asked for Board comment; Mr. Colbath asked if the Board is discussing the application as it is presented or as it might be amended.  Ms. Sherman answered as presented and stated that the Board can discuss the amendment during discussion.  Mr. Colbath stated that there should be a condition that either the Weston Farm part of the mural or the sign on the roof be removed.  Ms. Briggs stated that she is reading the motion as if having the sign or having the sign is a hardship and she does not believe it is a hardship.  Mr. Chalmers stated that he agrees with Ms. Briggs.  **Motion defeated with Ms. Briggs, Mr. Chalmers, Ms. Tobin and Ms. Sherman voting in the negative and Mr. Colbath voting in the affirmative.**

Ms. Sherman read item 1.b.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that the benefit sought by the applicant cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance**.  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

**Mr. Colbath made a motion, seconded by Ms. Briggs, that based on the findings of a and b above, denial of the variance would result in unnecessary hardship to the property owner seeking it.**  Ms. Sherman asked for Board comment; there was none.  **Motion defeated with Ms. Briggs, Mr. Chalmers, Ms. Tobin and Ms. Sherman voting in the negative and Mr. Colbath voting in the affirmative.**

Ms. Sherman read item 2.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that there would not be a diminution in value of surrounding properties as a result of granting this variance.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Adopted: September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

Ms. Sherman read item 3. **Mr. Colbath made a motion, seconded by Ms. Briggs, that the use contemplated by the petitioner as a result of obtaining this variance would not be contrary to the spirit and intent of the ordinance.** Ms. Sherman asked for Board comment; Mr. Colbath stated that one of the signs identifying Weston's Farm should be removed. Ms. Briggs stated that "the use" means the use of the property; it is attractive, but not having it is not going to damage the business itself. Mr. Chalmers agreed with Ms. Briggs. **Motion defeated with Ms. Briggs, Mr. Chalmers and Ms. Tobin voting in the negative and Mr. Colbath and Ms. Sherman voting in the affirmative.**

Ms. Sherman read item 4. **Mr. Colbath made a motion, seconded by Ms. Briggs, that the granting of this variance will not be contrary the public interest.** Ms. Sherman asked for Board comment; Ms. Briggs stated that it would not be contrary to the public interest if the wording was removed. Mr. Chalmers stated that public interest is defined in our Zoning Ordinance and far more people showed to vote for the changes in the ordinance than showed up in favor of the sign. **Motion carried with Mr. Colbath, Ms. Briggs and Ms. Sherman voting in the affirmative and Mr. Chalmers and Ms. Tobin voting in the negative.**

Ms. Sherman read item 5. **Mr. Colbath made a motion, seconded by Ms. Briggs, that by granting this variance, substantial justice would be done.** Ms. Sherman asked for Board comment; Ms. Briggs stated not having it would not be an injustice. Mr. Chalmers agreed with Ms. Briggs. **Motion carried with Mr. Colbath, Ms. Tobin and Ms. Sherman voting in the affirmative and Ms. Briggs and Mr. Chalmers voting in the negative.**

Mr. Chalmers stated if we eliminate the verbiage it becomes a mural or a piece of art. Mr. Irving stated the Board voted last meeting that it was still a sign with or without verbiage.

**Mr. Colbath made a motion, seconded by Ms. Tobin, that, based on the forgoing findings of fact, the variance from §147.13.8.1.8.3 of the Town of Conway Zoning Ordinance to permit the proposed mural be granted with the condition that the roof sign be removed. Motion unanimously carried.**

******************************************************************************

A public hearing was opened at 8:02 pm to consider a **VARIANCE** requested by **PAUL AND JOSEPHINE BROWN** in regard to §147.13.16.4 of the Conway Zoning Ordinance to permit a driveway within the 50-foot shoreline buffer at 134 Oxbow Lane, Conway (PID 263-1.8). Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, August 7, 2009.

Bob Tafuto of Ammonoosuc Survey Company appeared before the Board. Ms. Sherman read the application and the applicable section of the ordinance. Mr. Tafuto stated there is an existing pond that was manmade when constructing the roads for this subdivision as they excavated some materials for the road. Mr. Tafuto stated that the material was taken off his own parcel which created a pond, he unknowingly created a wetland and now both driveways are within the fifty foot buffer. Mr. Tafuto stated that the applicant would like create a unit subdivision on this lot, but the pond exists now and there is no way around it without being in the fifty foot buffer. Mr. Tafuto stated that the pond was not made by nature.

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

Ms. Briggs asked if it would be possible to dispose of the long existing driveway and have the one to be abandoned be the actual driveway.  Mr. Tafuto stated that the other one has always been a driveway as it was a woods road and the applicant would like to have the second owner break off so they would only have to maintain a small portion of the road together.  Ms. Briggs stated that both do not have to be there.

Mr. Irving stated that it would be the unit homeowner's association responsibility for the maintenance of the roads.  Mr. Chalmers stated there would be less of an impact by eliminating the lower driveway and keeping the upper driveway.  Mr. Tafuto stated that it would be less of an impact, but they both exist.  Ms. Briggs asked if this would be going to the Planning Board and if the application to the ZBA is premature.  Mr. Irving stated that this is not an approved driveway; the only driveway on the approved plan is the lower driveway.  Mr. Irving stated they need an approval from the ZBA to cross the buffer and they need that approval before they can go to the Planning Board.

Mr. Tafuto stated if you see fit to eliminate the lower driveway would take that back and work with that.  Ms. Sherman stated that it is more economical for the buffer to eliminate the existing driveway and extend the proposed driveway.  Mr. Irving stated that the existing driveway could be restored.  Ms. Sherman asked for public comment; there was none.

Ms. Sherman read item 1.a.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that an area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 1.b.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that the benefit sought by the applicant cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance**.  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

**Mr. Colbath made a motion, seconded by Ms. Briggs, that based on the findings of a and b above, denial of the variance would result in unnecessary hardship to the property owner seeking it.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 2.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that there would not be a diminution in value of surrounding properties as a result of granting this variance.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 3.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that the use contemplated by the petitioner as a result of obtaining this variance would not be contrary to the spirit and intent of the ordinance.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 4.  **Mr. Colbath made a motion, seconded by Mr. Chalmers, that the granting of this variance will not be contrary the public interest.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried**.

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

Ms. Sherman read item 5.  **Mr. Colbath made a motion, seconded by Ms. Briggs, that by granting this variance, substantial justice would be done.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

**Mr. Colbath made a motion, seconded by Ms. Briggs, that, based on the forgoing findings of fact, the variance from §147.13.16.4 of the Town of Conway Zoning Ordinance to permit a driveway within the 50-foot shoreline buffer be granted conditionally that the southerly driveway be eliminated.  Motion unanimously carried.**

*****************************************************************************
A public hearing was opened at 8:23 pm to consider a **VARIANCE** requested by **CONWAY AREA HUMANE SOCIETY** in regard to §147.13.1.11.11 of the Conway Zoning Ordinance to expand the current special exception to include a public dog park facility and expand the hours that animals may be permitted outside at 223 East Main Street, Conway (PID 265-11).  Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, August 7, 2009.

Mr. Colbath stepped down.  Ms. Sherman appointed Mr. Hylen as a voting member.  Virginia Moore of the Conway Area Humane Society appeared before the Board.  Ms. Sherman read the application and the applicable section of the ordinance.

Ms. Moore stated they would like to extend past 6:00 pm that that the animals could be outside.  Ms. Moore stated that the dog park would be open from dawn to dusk and people would be bringing their dogs to the park through a membership.  Ms. Moore stated that she feels this is a very advantageous project for the community.  Ms. Moore stated there would be fewer dogs on Schouler Park or other parks and it gives a safe place for dogs to be.

Ms. Moore stated that this would be fenced.  Ms. Moore stated in regard to concerns regarding cleanliness they would develop a committee, plus owners are responsible, but they would be policing.  Ms. Moore stated that the area would be mulched and refreshed as needed.  Ms. Moore stated that she doesn't think the noise would increase at all.  Ms. Moore stated that this would also help the shelter to have these memberships and have the community coming to the property that would not necessarily come to the property.

Mr. Irving stated that the Board granted a Special Exception for a kennel within the Residential Agricultural District.  Mr. Irving stated that there are no provisions for a public dog park in the Special Exception and there is a restriction that dogs are kept in an indoor area from 6:00 pm to 8:00 am.  Ms. Briggs asked that price of a membership.  Ms. Moore stated there would be different levels, but approximately $25 per year and passes for visitors.  Ms. Sherman asked if this would all be fenced.  Ms. Moore answered in the affirmative and stated there would be safety gates; you enter a small area and then open to the larger area so others cannot escape.

Mr. Chalmers stated he has been in that area and thinks it is a great idea.  Ms. Briggs asked how high the fence is and asked about winter.  Ms. Moore stated that they hope to plow and keep it open year round.  Ms. Tobin asked if they would set up some sort of policy regarding being open if it is too hot or too cold.  Ms. Moore stated that she hoped people would police themselves, but we will keep an eye for that.

Ms. Briggs asked if they would monitor whether they have had shots.  Ms. Moore answered in the affirmative.  Mr. Hylen asked what the purpose of the time limits was before.  Mr. Irving stated there

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

are homes in the vicinity; however, this section of the ordinance was adopted before he worked for the Town, but noise was the primary concern.  Mr. Hylen stated that dawn is very early in the summer.  Ms. Moore stated that the shelter dogs are out at 7:00 am or 7:30 am, when they are socializing they are not really noisy it's when they are not being paid attention to that they bark.

Ms. Sherman asked for public comment; Steve Bolter stated he is on the Board of Directors and in regard to the noise he has spent a lot of time at dog parks and very rarely there is any barking.  Mr. Bolter stated when you put them back in the kennels that is when they bark.  Mr. Bolter stated that the original idea when adopting a dog is that a dog needs exercise and they found out when you have 20 or 30 dogs and only 2 people to walk them they are not getting enough exercise during the day and they are more difficult to adopt.  Mr. Bolter stated that this gives back to the community and it brings the people in and lets the people see what we do and how we do it and participate in what we do.

Ms. Sherman read item 1.a.  **Ms. Briggs made a motion, seconded by Ms. Tobin, that the zoning restriction as applied interferes with a landowner's reasonable use of the property, considering the unique setting of the property in its environment.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 1.b.  **Ms. Tobin made a motion, seconded by Ms. Briggs, that no fair and substantial relationship exists between the general purpose of the zoning ordinance and the specific restriction on this property.**  Ms. Sherman asked for Board comment; there was none.  **Motion carried with Mr. Hylen voting in the negative.**

Ms. Sherman read item 1.c.  **Ms. Briggs made a motion, seconded by Mr. Chalmers, that the variance would not injure the public or private property rights of others.**  Ms. Sherman asked for Board comment; Ms. Briggs asked if for some reason this did turn out to be a nuisance is there recourse.  Mr. Irving stated that this Board is kind of the last stop; however, this will be going through the Planning Board, but before it is installed.  Mr. Irving stated if there is a nuisance after it would probably be civil.  Ms. Tobin stated she would assume those who would be affected would be here.  Mr. Irving stated abutters were notified and it was in the paper.  **Motion carried with Mr. Hylen voting in the negative.**

**Ms. Briggs made a motion, seconded by Mr. Chalmers, that based on the findings of a, b, and c above, denial of the variance would result in unnecessary hardship to the property owner seeking it.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 2.  **Ms. Briggs made a motion, seconded by Mr. Chalmers, that there would not be a diminution in value of surrounding properties as a result of granting this variance.**  Ms. Sherman asked for Board comment; there was none.  **Motion carried with Mr. Hylen voting in the negative.**

Ms. Sherman read item 3.  **Mr. Briggs made a motion, seconded by Mr. Chalmers, that the use contemplated by the petitioner as a result of obtaining this variance would not be contrary to the spirit and intent of the ordinance.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

Ms. Sherman read item 4.  **Ms. Briggs made a motion, seconded by Mr. Chalmers, that the granting of this variance will not adversely affect the public interest.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

Ms. Sherman read item 5.  **Ms. Briggs made a motion, seconded by Mr. Chalmers, that by granting this variance, substantial justice would be done.**  Ms. Sherman asked for Board comment; there was none.  **Motion unanimously carried.**

**Mr. Briggs made a motion, seconded by Ms. Tobin, that, based on the forgoing findings of fact, the variance from §147.13.1.11.11 of the Town of Conway Zoning Ordinance to expand the current special exception to include a public dog park facility and expand the hours that animals may be permitted within the dog park from dawn to dusk be granted.  Motion carried with Mr. Hylen voting in the negative.**

*****************************************************************************

A public hearing was opened at 8:45 pm to consider an **APPEAL FROM ADMINISTRATIVE DECISION** requested by **ANDREW CHALMERS IN REGARD TO JOHN DONOVAN** in regard to §147.14.2.2 of the Conway Zoning Ordinance to that the building permit to John Donovan was issued in error at 72 Kennett Street, Conway (PID 277-153).  Notice was published in the Conway Daily Sun and certified notices were mailed to abutters on Friday, August 7, 2009.

Mr. Chalmers stepped down at this time.  Mr. Colbath rejoined the Board at this time.  Andrew Chalmers appeared before the Board.  John Donovan and Randy Cooper of Cooper Cargill Chant, Attorney for John Donovan, and David Pandora, Building Inspector, were in attendance. Ms. Sherman read the application and the applicable section of the ordinance.

Mr. Cooper stated as a point of order, since Mr. Chalmers is a member of the Board, is the Board concerned with any influence.  The Board did not mention any concerns.  Mr. Cooper stated another point of order, there is an untimely issue on this, that this was not filed within 30 days, not even within 90 days, if anyone is suppose to know their own rules, Mr. Chalmers should know this.  Mr. Chalmers asked where it is written.  Mr. Cooper stated it is in the Board's rules and procedures.  Mr. Chalmers stated if it would please the Town, the permit was not visibly displayed and it is clear on our building permit that it is to be posted in a conspicuous location.  Mr. Chalmers stated that being on the shed where it can only be viewed from the pond is not a conspicuous location.

Mr. Cooper stated under RSA 676:5 an appeal shall be filed within 30 days of a decision and Mr. Chalmers emailed the Town June 15th, but did not file his appeal until July 17th; 31 days after his first email.  Mr. Chalmers stated there is nowhere in this document that it says 30 days.  Mr. Cooper stated that the ZBA rules and procedures states 30 days.  Mr. Chalmers stated that this was not to be an adversarial proceeding.  Mr. Chalmers stated that the Town advised him to file an appeal after trying to resolve this with the Town.  Mr. Cooper stated that he appreciates all of that, but a property owner is entitled to some finality and know when in fact; there is a 30 day appeal period, not a 31 day.  Mr. Cooper stated that they are clear on it in the court system.

Dino Scaletti stated that it seems a little disingenuous that the building permit would be put on the shed facing the water.  Mr. Scaletti stated that he goes to the property next door almost every day and he never saw a permit.

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

Mary Seavey stated that she owns the property next door and she was the one who brought it to Mr. Chalmers attention.  Ms. Seavey stated that she was home a couple of days before the house was torn down and happen to see the orange card on the shed while walking in her backyard.  Ms. Seavey stated that she went over to read it and couldn't believe the house was being torn down.  Ms. Seavey stated that the sign was not visible to anybody as there are a line of trees there.  Ms. Seavey stated if she had not walked down to the shoreline she would not have seen it.  Ms. Seavey stated that she did put a call into the owner, but he did not return her call.

Jacqueline Scaletti stated that she feels just as strongly the permit should have been posted in a public place.  Mr. Cooper stated that he doesn't make the rules; the point is they saw it and they had actual notice.  Mr. Cooper stated that the clock didn't start until actual notice and Mr. Chalmers acknowledges to the Town on June 15th.  Mr. Cooper stated that is after they saw the posting and he did not file an appeal until July 17th and what he filed on July 17th was a blank piece of paper.  Mr. Cooper stated that it wasn't until August 13th that he filed his complaint and what was filed was not on a timely basis.

Ms. Tobin asked how firm the 30 days is.  Mr. Irving stated he is not a lawyer, but best to his knowledge, this Board established a 30 day requirement, but when did the person have knowledge.  Mr. Cooper submitted a copy of Preston T. Kelsey, II vs. Town of Hanover.  Mr. Chalmers stated that it needs to be posted by the Zoning Official so that it is visible to the public and no work can be done.  Mr. Cooper stated that they upheld a Zoning Board rule that needed to be followed.

Mr. Chalmers stated that the ordinance reads "No Zoning Permit issued hereunder shall take effect until fifteen days have passed after it issuance.  Within three days following the issuance of a Zoning Permit, the Zoning Administrator shall post a copy of this permit in at least one public place until fifteen days have elapsed from the date of issuance…During this fifteen-day period, an appeal of the Zoning Permit may be filed with the Zoning Board…".

Mr. Chalmers stated that they are saying it was publically posted, not in a file, under a seat or on a shed facing the pond.  Mr. Cooper stated actual notice, when you actually obtained notice, was 32 days before the appeal was filed.

Ms. Seavey stated the building permit was just a piece of paper until the NHDES permit was issued.  Mr. Colbath stated we have an application before us and we are asked to review it.  Mr. Colbath stated that the Town has accepted the application and the fee, is that a legal opinion of the Town that this is legal.  Mr. Irving answered in the negative and stated we received an application and we put it on the next agenda.  Mr. Colbath stated he is not sure if he has legal expertise enough to decide this and we need to make that decision before we go further.  Ms. Briggs agreed with Mr. Colbath.

Deb Chalmers stated she lives across the street and we did not get noticed.  Ms. Chalmers stated that it is up to the town to post.  Ms. Chalmers stated that they did not have any knowledge and when they were informed they contacted the Town.  Ms. Chalmers stated that they continually emailed those concerns of the zoning and the issue of the building permit to the Town, and then they suggested appealing the decision when it could not be resolved.  Ms. Chalmers stated if we were an abutter we would have known much earlier, but we would have had no idea if Mrs. Seavey did not notify us.

Mr. Chalmers asked the date of the email advised by Mr. Sires and Mr. Pandora of appealing the decision.  Mr. Cooper stated your saying in your position that someone has to be advised before submitting an appeal.  Mr. Chalmers stated that he went to the town, did due diligence, met on site,

Adopted:  September 16, 2009 – As Written
**CONWAY ZONING BOARD OF ADJUSTMENT – AUGUST 19, 2009**

best course of action would be to appeal.  Mr. Cooper asked what the date was.  Mr. Chalmers answered June 30th.  Mr. Chalmers stated the date the permit went up was the day he notified the town and the next day the house was down.

The Board discussed continuing to get legal advice.  Mr. Chalmers suggested a stop work order.  Mr. Hylen stated it would be up to Mr. Donovan to risk losing money.  Mr. Irving stated there was no direct or official action until the appeal was filed.  **Mr. Colbath made a motion, seconded by Ms. Briggs, to continue the hearing to September 16, 2009 at 7:30 pm and ask for legal representation.  Motion unanimously carried.**

**REVIEW AND ACCEPTANCE OF MINUTES**

**Ms. Tobin made a motion, seconded by Mr. Hylen, to approve the Minutes of July 15, 2009 as written. Motion carried with Ms. Briggs and Mr. Colbath abstaining from voting.**

Meeting adjourned at 9:20 pm.

Respectfully Submitted,

Holly L. Meserve
Planning Assistant